## A09A0835. NAYLOR v. THE STATE.
(685 SE2d 383)

ANDREWS, Presiding Judge.

Sonya Marie Naylor appeals from the judgment of conviction entered on jury verdicts finding her guilty as a party to eight counts of sexual abuse of her minor twin daughters, S. N. and K. N., when they were between four and eight years of age. Ms. Naylor and her husband, Phillip Woodrow Naylor (the girls' father) were jointly indicted on the charges and tried together. Although there was no evidence that Ms. Naylor directly committed the charged offenses, the jury found that she was guilty as a party to eight offenses that Mr. Naylor was found guilty of directly committing: Count 1 (aggravated child molestation) alleging that he placed his penis on S. N.'s anus in violation of OCGA § 16-6-4 (c); Count 2 (aggravated child molestation) alleging that he touched S. N.'s vaginal area with his mouth in violation of OCGA § 16-6-4 (c); Count 4 (child molestation) alleging that he caused S. N. to touch his penis with her hand in violation of OCGA § 16-6-4 (a); Count 5 (rape) alleging that he had carnal knowledge of K. N. in violation of OCGA § 16-6-1 (a) (2); Count 6 (aggravated child molestation) alleging that he touched K. N.'s vaginal area resulting in physical injury to the child in violation of OCGA § 16-6-4 (c); Count 7 (aggravated child molestation) alleging that he placed his penis on K. N.'s anus in violation of OCGA § 16-6-4 (c); Count 9 (child molestation) alleging that he touched K. N.'s vaginal area with his penis in violation of OCGA §

16-6-4 (a); and Count 10 (child molestation) alleging that he touched K. N.'s vaginal area with his hand in violation of OCGA § 16-6-4 (a).

Ms. Naylor contends on appeal that she did not know about these offenses until her daughters revealed them to a therapist and Mr. Naylor was arrested, and that the evidence was insufficient to prove beyond a reasonable doubt that she was guilty as a party to the offenses. We find the evidence was sufficient to prove that Ms. Naylor was guilty as a party to the offense of child molestation in Count 4 based on evidence that Mr. Naylor caused S. N. to touch his penis with her hand, and that Ms. Naylor knew about and aided and abetted Mr. Naylor's commission of this offense. We therefore affirm Ms. Naylor's conviction on Count 4 of the indictment. Because the evidence was insufficient to prove that Ms. Naylor was guilty as a party to the offenses set forth in the remaining seven counts, we reverse her conviction on those counts, vacate the sentence imposed on her on all eight counts, and remand the case to the trial court for resentencing on Count 4.

A person who intentionally aids or abets in the commission of a crime directly committed by someone else may be charged and convicted as a party to the crime even though the person did not directly commit the crime. OCGA §§ 16-2-20 (a), (b) (3); 16-2-21.

> While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred. If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.

(Citations, punctuation and emphasis omitted.) *Butler v. State*, 194 Ga. App. 208, 209 (390 SE2d 278) (1990); *Ratana v. State*, 297 Ga. App. 747, 748-750 (678 SE2d 193) (2009).

The State produced evidence that Mr. Naylor directly committed all eight of the offenses alleged in the counts at issue. A child therapist testified that, when the twins were eight years old, Ms. Naylor brought them to her for therapy, primarily because K. N. was manifesting angry behavior and insisting that she wanted to be a boy.

Ms. Naylor told the therapist that she caught the girls watching pornographic movies at the house and caught S. N. playing with a sexual device she kept at the house. Evidence showed that Mr. and Ms. Naylor kept adult and child pornography at their house along with a collection of sexual devices. S. N. told the therapist that, when their mother was away from the house, she and K. N. watched adult pornographic films with their father and watched him play with his penis. S. N. said that their mother did not know about this because it only happened when she was gone. S. N. added that they only watched the pornographic films when her mother was gone because, when her mother would later see the film cases lying about, she would say "those are wrong movies to watch." The girls told the therapist that they took baths with their father and touched his "little wiener" while they were in the tub with him. The therapist testified that the girls referred to a penis as a hot dog or a wiener. Evidence showed that Ms. Naylor was aware that the girls frequently bathed with their father, and that they frequently saw and touched their father's penis, but she claimed that was part of their family's "nudist lifestyle," and that the girls "played with his penis all the time to aggravate and tease him." Using anatomically correct dolls, the twins demonstrated their sexual knowledge to the therapist by masturbating the male doll, digitally penetrating the female doll's vagina, and showing the male doll anally sodomizing the boy doll. K. N. described these things to the therapist as her secrets and said that her secrets began at age four. S. N. told the therapist that her daddy had been "doing sex to us" and described the sex as "touching private parts with touch, fingers, and hot dogs." According to the therapist, both girls told her about sexual activity with their father involving "anal penetration," "digital penetration," and "vaginal penetration." Both girls later used the dolls to demonstrate to the therapist and to Ms. Naylor how their father had sex with them, saying that it hurt when his penis went in their rectums, but not when his penis went in their vaginas. Although evidence showed that the girls told the therapist that they told their mother about having sex with their father, the therapist clarified that the girls said they did not tell their mother about the sex until after Mr. Naylor was arrested as a result of the girls' outcry during therapy. Other than information that Ms. Naylor knew the girls were touching their father's penis, the therapist gathered no information that Ms. Naylor knew of sexual activity between the girls and Mr. Naylor before he was arrested. The therapist testified that the girls never revealed any sexual abuse by their mother, and that they said their mother "would whip their butts if she ever caught them watching those [pornographic] videos." At a later therapy session, the girls informed the therapist that their mother told them not to talk to her

further about what their father had done to them.

The jury also viewed a videotape of the girls being interviewed by a social worker when they were eight years old. During this interview, S. N. told the social worker that, while she and her sister were at home with their father, her father put his mouth on their vaginal areas; put his penis on their anus areas; and made them touch his penis with their hands. S. N. said that her mother did not know about this activity because she was not home at the time; that their father told them not to tell; and that they never told their mother. K. N. told the social worker that, while she and her sister were at home with their father, they watched pornographic films and he touched their vaginal areas with his hand. She said that her mother was not at home when this occurred and her mother did not know it happened. K. N. also said that her father used his penis to touch her vaginal area on the outside and to penetrate inside her vagina. She said that her mother did not know about this because she was not home when it happened, and that her father would stop doing this whenever her mother got back to the house. K. N. told the social worker that, when she was four years old, she told her mother on one occasion that her father touched her vaginal area with his hand, and that her mother gave her a spanking. Finally, a vaginal medical examination performed on K. N. to discover any physical injury resulting from the sexual abuse showed some evidence of traumatic injury, but nothing that Ms. Naylor could observe as evidence of the abuse.

With respect to the offense of child molestation set forth in Count 4 — that Mr. Naylor caused S. N. to touch his penis with her hand — there was evidence that Ms. Naylor knew about and saw this offense, lent her approval to Mr. Naylor's conduct, and thereby aided and abetted the commission of the offense. OCGA §§ 16-2-20; 16-2-21. The evidence was sufficient to prove beyond a reasonable doubt that Ms. Naylor was guilty as a party to this offense. *Butler*, 194 Ga. App. at 209; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). As to the remaining offenses, the only evidence that Ms. Naylor had knowledge (prior to the outcry) of any of these offenses was K. N.'s statement to the social worker that, at age four, she told her mother on one occasion that her father had touched her vaginal area. Otherwise, both girls said that their mother was not present at the house when the offenses occurred, and that their mother had no knowledge of the offenses because they never told her. To the extent the State relied on circumstantial evidence to prove that Ms. Naylor was guilty as a party — the family's nudist lifestyle, the girls' unusual knowledge of sexual matters, pornographic movies at the house, and evidence that, at some point in therapy, Ms. Naylor told the girls not to talk about their father — we find that the evidence does not exclude every reasonable hypothesis save that of guilt.

OCGA § 24-4-6. The evidence was insufficient to prove beyond a reasonable doubt that Ms. Naylor was guilty as a party to these offenses.

*Judgment affirmed in part and reversed in part, and case remanded. Miller, C. J., and Barnes, J., concur.*

DECIDED OCTOBER 8, 2009.

*Donna A. Seagraves*, for appellant.

*Richard K. Bridgeman, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.